AO 106 (Rev. 7/87) Affidavit for Search Warrant

ORIGINAL

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

# United States District Court

FEB 1 8 2004

**DISTRICT OF** _Hawaii_

at __10__ o'clock and __50__ min. __A__ M
WALTER A.Y.H. CHINN, CLERK

**In the Matter of the Search of**

(Name, address or brief description of person, property or premises to be searched)

EUNSONE. NET
2216 O TOOLE AVE
SAN JOSE, CA 9701

**APPLICATION AND AFFIDAVIT
FOR SEARCH WARRANT**

CASE NUMBER: _mag 04-0162 LEK_

I _Mylene Oconor_ being duly sworn depose and say:

I am a(n) _SA with ICE_ and have reason to believe

Official Title

that ☐ on the person of or ☒ on the property or premises known as (name, description and/or location)

EUNSONE.NET
2216 O TOOLE AVE
SAN JOSE CA 9701

in the _Northern_ District of _California_

there is now concealed a certain person or property, namely (describe the person or property to be seized)

SEE ATTACHMENT A

which is (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)

concerning a violation of Title _21_ United States code, Section(s) _872(s)_
& _Title 18 U.S.C. § 1956_

Continued on the attached sheet and made a part hereof.        ☒ Yes  ☐ No

_____
Signature of Affiant

Sworn to before me, and subscribed in my presence

_2/17/04_        at   _Honolulu, HI_
Date                        City and State

_____        _____
Name and Title of Judicial Officer                Signature of Judicial Officer

<u>**AFFIDAVIT OF MYLENE OCONER IN SUPPORT OF**</u>
<u>**APPLICATION FOR SEARCH WARRANT**</u>

I, Mylene Oconer, being first duly sworn, hereby depose and state as follows:

## A.    INTRODUCTION AND AGENT BACKGROUND

1.    I make this affidavit in support of an application for search warrant for data and information (which are further detailed in the following paragraphs and in Attachment A), for electronic mail (hereafter referred to as "e-mail") address cbass@yellowsnow.com, controlled by Everyone.net (hereafter referred to as " Everyone.net "), located at 2216 O'Toole Avenue, San Jose, CA 95131.  As set forth herein, I respectfully submit that there is probable cause to believe that the items sought by this search warrant constitute evidence of violations of Title 18 United States Code, Sections 1956, that is, Money Laundering, and Title 21, United States Code, Sections 952 (a), Importation of a Controlled Substance, over which the District of Hawaii has jurisdiction over the offenses under investigation.

2.    I have been a Special Agent with the Department of Homeland Security, United States Immigration and Customs Enforcement (hereafter referred to as "ICE") since May of 2002. I am currently assigned to the Assistant Special Agent In Charge, Honolulu, Hawaii. During my employment with ICE, I have received nineteen weeks of intensive training as a Criminal Investigator at the Federal Law Enforcement Center ("FLETC") in Glynco,

1

Georgia, to include but not limited to, drug investigations, money laundering, cyber crime, and undercover operations. During my career with ICE, I have participated in approximately fifteen federal drug search warrants. I completed two weeks of Basic Narcotics Investigation School conducted by the Drug Enforcement Administration in Honolulu, HI. The training included topics such as global drug trends, drug identification, undercover buy/busts, club drugs, marijuana/cocaine/heroin overview, and the Western States Information Network ("WSIN"). I also received two weeks training in the Cyber Crimes Investigations Course at FLETC. The course was a hands-on historical/technical overview of the internet which included topics such as advanced search tools, Internet Service Providers, legal issues, undercover operations, newsgroups, internet relay chat, investigative software suites, instant messaging, digital evidence, computer forensic seizures and electronic mail communication.

**B.   CO-AFFIANT'S TRAINING AND EXPERIENCE**

3.    Senior Special Agent Frank Okamura(hereafter referred to as "SA") with ICE is assigned to the Assistant Special Agent in Charge, Honolulu, Hawaii, and has been employed since November of 1992. Prior to SA Okamura's employment with ICE, he was employed as a Special Agent with the United States Immigration and Naturalization Service (hereafter referred to as "INS") for approximately five years.  During his tenure as a Special Agent,

2

he conducted and participated in numerous investigations of
criminal activity, including, but not limited to, the
investigation of narcotics, money laundering, currency reporting
violations and computer-related offenses.  During the
investigation of these cases and others that he has investigated,
he has executed or participated in the execution of more than one
hundred search warrants, and seized evidence of violations.

4.    This affidavit is made in part on information provided to
your affiant by SA Okamura and other law enforcement agents and
officers.

**C.    SEARCH PROCEDURE**

5.    In order to ensure that agents search only those computer
accounts and/or computer files described in Attachment A, the
search warrant seeks authorization to permit employees of
Everyone.net to assist agents in the execution of the respective
warrants.  To further ensure that agents executing the warrant
search only those accounts and/or computer files described in
Attachment A, the following procedures have been implemented:

A.    The warrant will be presented to Everyone.net personnel
who will be directed to isolate those accounts and files
described in Attachment A;

B.    In order to minimize any disruption of computer service
to innocent third parties, Everyone.net 's system administrator
as well as law enforcement personnel trained in the operation of

3

computers will create an exact duplicate of the accounts and
files described in Attachment A, including an exact duplicate of
all information stored in the computer accounts and/or files
described in Attachment A;

C.   The systems administrator will provide the exact
duplicate in hard copy and electronic form of the accounts and
files described in Attachment A and all information stored in
those accounts and/or files to the Special Agent who serves the
search warrant;

D.   Law enforcement personnel will thereafter review the
information stored in the accounts and files received from the
systems administrator and then identify and copy that information
which is authorized by the search warrant;

E.   Law enforcement personnel will then seal the original
duplicate of the accounts and files received from the systems
administrator and will not further review the original duplicate
absent an order of the Court.

**D.   BACKGROUND REGARDING COMPUTERS**

6.   The term "computer" as used herein is defined as set forth
in 18 U.S.C. § 1030(e)(1), and includes an electronic, magnetic,
optical, electrochemical, or other high speed data processing
device performing logical, arithmetic, or storage functions, and
includes any data storage facility or communications facility
directly related to or operating in conjunction with such device.

4

7.    Based on my training, experience and knowledge the following is information regarding computer-related crimes:

A.    The Internet is a worldwide network of computer systems.  In order to access the Internet, a computer must subscribe to an access provider with direct access to the Internet.

B.    A device known as a modem allows any computer to connect to another computer through the use of telephone lines or other telecommunication lines.  The modem may be internal or external to the computer.

C.    Many individuals and businesses obtain their access to the Internet through businesses known as Internet Service Providers (hereafter referred to as "ISPs").  ISPs provide their customers with access to the Internet using telephone or other telecommunication lines; Internet e-mail accounts that allow users to communicate with other Internet users by sending and receiving electronic messages through the ISPs' servers; remotely store electronic files on their customers' behalf; and the ISP may also provide other services unique to each particular ISP.  ISPs maintain records pertaining to the individuals or companies that have subscriber accounts with it.  Those records could include identifying and billing information, account access information in the form of log files, e-mail transaction information, posting information, account application information, and other information

5

both in computer data format and in written record format.  ISPs reserve and/or maintain computer disk storage space on their computer system for the use of the Internet service subscriber for both temporary and long-term storage of electronic communications with other parties and other types of electronic data and files. E-mail that has not been opened is stored temporarily by an ISP incident to the transmission of the e-mail to the intended recipient, usually within an area known as the home directory. Such temporary, incidental storage is defined by statute as "electronic storage," and the provider of such a service is an "electronic communications service" provider.  A service provider that is available to the public and provides storage facilities after an electronic communication has been transmitted and opened by the recipient, or provides other long term storage services to the public for electronic data and files, is providing a "remote computing service."

D.    Domain name identifies a computer or group of computers on the Internet, and corresponds to one or more Internet Protocol addresses within a particular range.  Domain names are typically strings of alphanumeric characters, with each "level" of the domain delimited by a period (e.g., Computer.networklevel1.networklevel2.com).  A domain name can provide information about the organization, ISP, and physical location of a particular network user.

6

E.   A server is a centralized computer that provides services for other computers connected to it via a network.  The other computers attached to a server are sometimes called "clients."  In a large company, it is common for individual employees to have client computers at their desktops.  When the employees access their e-mail, or access files stored on the network itself, those files are pulled electronically from the server, where they are stored, and are sent to the client's computer via the network. Notably, server computers can be physically stored in any location; it is common for a network's server to be located hundreds (and even thousands) of miles away from the client computers.

F.   Log files are computer files that contain records about system events and status, the activities of users, and anomalous or unauthorized computer usage.  Names for various log files include, but are not limited to: user logs, access logs, audit logs, transactional logs, and apache logs.

G.   Most services offered on the Internet assign users a name or ID, which is a pseudonym that computer systems use to keep track of users.  User names and IDs are typically associated with additional user information or resources, such as a user account protected by a password, personal or financial information about the user, a directory of files, or an e-mail address.

H.   To access an ISP, one must pay a monthly fee to the ISP operator. There are companies that provide free e-mail service

7

and Internet Relay Chat or chat room access, however, using a
modem, one can transmit and receive e-mail or IRC chats between
computers.

8.    Based on the training I have received regarding the use of
computers, I have knowledge of the method by which e-mails are
transmitted between computers:

A.    With the modem, a computer user can transport a
computer file to his own computer, so that the computer file is
stored in his computer.  The process of transporting a file to
one's own computer is called "downloading."

B.    The user can then view the file on his/her computer
screen (monitor), and can "save" or retain the file on his/her
computer for an indefinite time period.

C.    In addition to permanently storing the file on the
computer, the user may print the file.

D.    The original file that was downloaded is also
maintained in the originating computer.

E.    With the modem, a computer user can send a file from
the computer to another computer on the Internet.  This process
of sending a file is called "uploading."

F.    The process of "uploading" is similar to the
"downloading" process except the user is sending rather than
retrieving the information from another computer.

8

## E.    BACKGROUND ON EVERYONE.NET

9.    Based on my training and experience, as well as the training and experience of SA Okamura, we have learned the following about Everyone.net:

A.    Everyone.net is a third party hosted service provider to over 200,000 websites. The owner of YellowSnow.com signed up for a free service with Everyone.net to allow the visitors to their website to sign up for an e-mail service for user@yellowsnow.com. Only the domain owner can make the required DNS updates to allow Everyone.net to manage the e-mail service for their domain. As Everyone.net is a hosted e-mail service, all of the user information and e-mail messages for yellowsnow.com are handled by the Everyone.net servers and infrastructure.

B.    Everyone.net maintains records pertaining to the individuals or companies for which they maintain subscriber accounts.  These records include: account access information (usage logs), basic subscriber information (name, address, telephone number, length of service and type of service), credit card billing information and in some cases subscriber's e-mails in all computer data formats, which records the activities and interactions of these accounts.

C.    Each subscriber to Everyone.net accesses the Internet using either a broadband (ISDN, DSL, and cable modem) or a dial-up connection through a modem connected to a telephone line with

the central computer system operated by Everyone.net.

D.   Any e-mail that is sent to a Yellowsnow subscriber is stored in the subscriber's "mail box" on an Everyone.net mail server until said subscriber connects to Yellowsnow and downloads his/her messages.  After the subscriber downloads a particular message, it does not remain on Everyone.net's server, unless the subscriber enables the option on their mail client  (Outlook Express, Netscape, etc.) that says "leave a copy of the message on the server."

E.   When a subscriber sends an e-mail, it is usually initiated at the user's computer, transferred via modem to Everyone.net's mail server and passes straight through Everyone.net's system, and is not preserved or logged in any way and is transmitted to its end destination.  There is no option here for the subscriber to "delete" the e-mail from Everyone.net system, as it is never stored therein. Users of the YellowSnow.com e-mail service, login to access their mail at http://www.yellowsnow.com.  When a user is in his/her web mailbox to send/receive mail, the e-mail pages are hosted by Everyone.net. Users never have to go to www.everyone.net to send/receive e-mail. The sent message, if sent to another Yellowsnow subscriber would reside on the Everyone.net mail server until the recipient downloads it onto their mail client. It does not remain on Everyone.net's server, unless again that

10

subscriber enables the option on their mail client that says
"leave a copy of the message on the server."

F.    A Yellowsnow subscriber can store e-mails and image
files on the server located at Everyone.net in his/her account or
in any other account to which he/she has access.

G.    E-mails and image files stored on the Everyone.net
server by a subscriber will not necessarily be located on the
subscriber's home computer.  The subscriber may store on the
server at Everyone.net e-mails or other files for which there is
insufficient storage space on the subscriber's computer or which
he/she does not wish to maintain on the computer in his/her
residence.

## F.    STORED WIRE AND ELECTRONIC COMMUNICATION ACCESS

10.  Title 18, United States Code, Chapter 121, Sections 2701
through 2711, is entitled "Stored Wire and Electronic
Communications and Transactional Records Access."

A.    Title 18, United States Code, Section 2703(a) provides,
in part:

A governmental entity may require the disclosure
by a provider of electronic communication service
of the contents of an electronic communication,
that is in electronic storage in an electronic
communications system for one hundred and eighty
days or less, only pursuant to a warrant issued
under the Federal Rules of Criminal Procedure or
equivalent State warrant. A governmental entity
may require the disclosure by a provider of
electronic communications services of the contents
of an electronic communication that has been in

11



electronic storage in an electronic communications system for more than one hundred and eighty days by the means available under subsection (b) of this section.

      B.    Title 18, United States Code, Section 2703(b) provides, in part:

      (1)  A governmental entity may require a provider of remote computing service to disclose the contents of any electronic communication to which this paragraph is made applicable by paragraph (2) of this subsection--

      (A)  without required notice to the subscriber or customer, if the governmental entity obtains a warrant issued under the Federal Rules of Criminal Procedure or Equivalent State warrant.

      (2)  Paragraph (1) is applicable with respect to any electronic communication that is held or maintained on that service --

      (A)  on behalf of, and received by means of electronic transmission from (or created by means of computer processing of communications received by means of electronic transmission from), a subscriber or customer of such remote computing service; and

      (B)  solely for the purpose of providing storage or computer processing services to such subscriber or customer, if the provider is not authorized to access the contents of any such communications for purposes of providing any services other than storage or computer processing.

      C.    Title 18, United States Code, Section 2703(c)(1)(B), provides, in part, that the government may also obtain records or information pertaining to subscriber identification.  Title 18, United States Code, Section 2703(c)(2), provides, in part, that the

government receiving said records or information is not required to provide notice to a subscriber.

D.   Title 18, United States Code, Section 2711, provides, in part:

As used in this chapter --
(1)   the terms defined in section 2510 of this title have, respectively, the definitions given such terms in that section; and

(2)   the term "remote computing service" means the provision to the public of computer storage or processing services by means of an electronic communications system.

E.   Title 18, United States Code, Section 2510, provides, in part:

(8) "contents," when used with respect to any wire, oral, or electronic communication, includes any information concerning the substance, purport, or meaning of that communication;

(14) "electronic communications system" means any wire, radio, electromagnetic, photooptical or photoelectronic facilities for the transmission of electronic communications, and any computer facilities or related electronic equipment for the electronic storage of such communications;

(15) "electronic communication service" means any service which provides to users thereof the ability to send or receive wire or electronic communications;

(17) "electronic storage" means --
(A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and

(B) any storage of such communication by an electronic communication service for purposes of backup protection of such

13

communication.

    F.   Title 18, United States Code, Section 2703(f) provides, in part:

      (1)  A provider of wire or electronic communication services or a remote computing service, upon the request of a governmental entity, shall take all necessary steps to preserve records and other evidence in its possession pending the issuance of a court order or other process; and

      (2)  Records referred to in paragraph (1) shall be retained for a period of 90 days, which shall be extended for an additional 90-day period upon a renewed request by the governmental entity.

## G.   FACTS SUPPORTING PROBABLE CAUSE

11. In August of 2003, ICE and DEA initiated a drug trafficking investigation on Jaren Wayne Feser (hereafter referred to as "Feser"), a Canadian citizen and suspected source of crystal methamphetamine (commonly referred to as "ice") for federal defendant Michael Seth Anglin (hereafter referred to as "Anglin"). On March 9, 2003, Anglin was charged by a Federal Grand Jury in the District of Hawaii for Title 21, United States Code, Sections 841(a)(1) and 841(b)(1). As a result of Anglin's arrest, approximately 108 grams of ice was recovered from his backpack located in his vehicle. Anglin stated that the ice was from a partial shipment sent by Feser. Anglin is cooperating and on July 23, 2003, pleaded guilty to violating Title 21, United States Code, Sections 841(a)(1) and 841(b)(1). Anglin identified

14

Feser as a Caucasian male, approximately 19 to 20 years of age, about 5'4" with a slim build.

12.  Anglin stated that Feser traveled to Honolulu sometime in 2002.

A.   U.S. Customs and INS database checks for Jaren Feser revealed a match on a Jaren Feser, a Canadian citizen born on April 28, 1984. Checks further showed that Feser arrived in Honolulu from Canada on April 26, 2002.

13.  Criminal history checks for Feser revealed that Canada Customs arrested Feser for smuggling a prohibited firearm on August 18, 2003. Records requested from Canada Customs and Revenue Agency on September 2, 2003, revealed that Feser had entered Canada on August 18, 2003, and utilized Canada Passport VG286934, with a DOB of April 28, 1984. Feser had a Canada Driver's License (License No. 7305685) which verified his DOB of April 28, 1984. Feser's driver's license and Vehicle Registration document revealed the following information:

        Jaren Wayne Feser
        4750 215B St.
        Langley BC
        V3A 9E8

14.  Anglin stated that he communicated with FESER via e-mail regarding their drug trafficking activities. Anglin said that Feser sent him shipments of ice via FedEx during the year of 2002 through 2003 and Anglin sent Feser money via FedEx as payment for

15

the ice shipment during the same period of time. Anglin also said that FESER's e-mail address was cbass@yellowsnow.com and his user name was "Osama Binladin". Anglin provided the Agents access to his e-mail account that contained e-mail messages from Feser. The following are Anglin's e-mails to/from Feser with descriptions or excerpts of the pertinent communications:

A.    On June 24, 2002, and August 15, 2002, Feser e-mailed Anglin. Feser stated, "hey im fuckin broke as fuck I need $40 to send that letter...jaren feser, 4750 215b str., v3a 9e8, langley bc, canada." This address confirmed the address on Feser's driver's license and vehicle registration.

B.    On August 23, 2002, Feser e-mailed Anglin. Feser stated, "hey can u tell me wether u think this will work." Feser attached a document to the e-mail. The attachment was downloaded and results revealed a document- "Lyntech Laboratories Ltd. Order Form for 50 kilograms of Ephedrine HCL for the amount of $3745.00 USD." Billing and Shipping information indicated "Lyntech Laboratories Ltd., 4750 215B Street, Langley, BC V3A 9E8, Phone No. (778) 868-8582, Fax No. (775) 429-6827. Anglin admitted that Lyntech Laboratories Ltd. is a fictitious business name that he and Feser created. The address for Lyntech Laboratories Ltd. also confirmed Feser's home address. Anglin also stated that phone number (778) 868-8582 is Feser's cellular phone.

16

C.    On August 23, 2002, Feser e-mailed Anglin. Feser
stated, "and do u wanna lend me the money to get this instead of
waiting til the undukern fucks send me back my money? u kno im
good for it ill pay u back as soon as i get my check back and if
anything goes wrong ill pay u back no matter what and nothing
will go wong this time i promise."

15.  Grand Jury Subpoena records received from Everyone.net on
January 16, 2004, for Feser's subscriber account information
revealed the following:

```
Address:       cbass@yellowsnow.com
First Name:    Osama
Last Name:     Binladin
Birthday:      December 25, 1901
City:          Pergatory
Country:       Afghanistan
Password:      CUEUDVKW9YEN
User Id:       16700384
Client Id:     147238
Created:       January 13, 2002
Last Login:    January 14, 2004
Total Logins:  408
```

A.    According to Everyone.net, Yellowsnow is a free e-mail
service and does not require users to provide their true name on
the account. Based on my training and experience, and the
experience of other agents, drug dealers are known to use
fictitious names on e-mail accounts and parcel shipments to evade
law enforcement. Anglin also admitted that Feser always used a
fictitious name on the FedEx shipments.

16.  On 09-24-03, an undercover e-mail account was created with

17

Yahoo for the purpose of initiating conversation with FESER.   The

e-mail address established was wyl_e_coyote1@yahoo.com.   The

following is a summary of the e-mail communication to/from FESER

for the period covering 9-24-03 to 2-11-04:

Date: Wed., 9/24/03
From: wyl_e_coyote1@yahoo.com
To: Cbass@yellowsnow.com
Message: im a friend of oliver r u intrested in doing business

     A.   "Oliver" is an alias for Anglin.

Date: Sun., 10/5/03
From: Cbass@yellowsnow.com
To: wyl_e_coyote1@yahoo.com
Message: not really. depends on what you have in mind.

Date: Thu., 10/9/03
From: wyl_e_coyote1@yahoo.com
To: Cbass@yellowsnow.com
Message: can u send me something.

Date: Fri., 10/10/03
From: Cbass@yellowsnow.com
To: wyl_e_coyote1@yahoo.com
Message: how much will you pay?

Date: Sat., 10/11/03
From: Cbass@yellowsnow.com
To: wyl_e_coyote1@yahoo.com
Message: can u get excstasy

Date: Tue., 10/14/03
From: wyl_e_coyote1@yahoo.com
To: Cbass@yellowsnow.com
Message: can u can i get a sample

Date: Fri., 10/17/03
From: Cbass@yellowsnow.com
To: wyl_e_coyote1@yahoo.com
Message: a sample of what? i dont even kno what u r talking
about. who's oliver?

Date: Mon., 12/1/03

From: Cbass@yellowsnow.com
To: wyl_e_coyote1@yahoo.com
Message: hey how can i trust u anyways? would u be willing to meet me?

Date: Wed., 12/3/03
From: Cbass@yellowsnow.com
To: wyl_e_coyote1@yahoo.com
Messages: call me 604-787-8319

Date: Fri., 12/5/03
From: wyl_e_coyote1@yahoo.com
To: Cbass@yellowsnow.com
Message: do u want to meet here? let me know

Date: Sat., 12/6/03
From: Cbass@yellowsnow.com
To: wyl_e_coyote1@yahoo.com
Message: give me a price per zip

    A.   "Zip" is a slang term that drug dealers use for ounce.

Date: Tue., 12/9/03; 16:49 (PST)
From: wyl_e_coyote1@yahoo.com
To: Cbass@yellowsnow.com
Message: 13.got zip?

    A.   "13" is a term for $1300.00.

Date: Thu., 1/22/04
From: Cbass@yellowsnow.com
To: wyl_e_coyote1@yahoo.com
Message: k i got 4libs ready. i will start out by sending u 1z then if u work out for me ill double it each time. lemme know how u want it shipped.

    A.   "4libs" is a slang term for four pounds and "1z" is a slang term for one ounce.

Date: Fri., 1/23/04
From: Cbass@yellowsnow.com
To: wyl_e_coyote1@yahoo.com
Message: i gotta go down to the u.s. in bout a week so try and get me an addy and how u want it shipped before then and ill try and send some.

19

A.    "Addy" is an internet term for "address".

Date: Fri., 1/23/04 (ICE Agents set up undercover address with
Hawaii Mail Box Service, 575 Cooke St., Honolulu, HI 96813)
From: wyl_e_coyote1@yahoo.com
To: Cbass@yellowsnow.com
Messages: send fedex to will cain 575 cooke st a-2803 honolulu hi
96813. let me know when u send it.

Date: Wed., 1/28/04
From: Cbass@yellowsnow.com
To: wyl_e_coyote1@yahoo.com
Messages: ill try and send it next week

Date: Tue., 2/3/04
From: Cbass@yellowsnow.com
To: wyl_e_coyote1@yahoo.com
Messages: i got a bit of a dilemma….all the shit is in about 20
gallons of toluene in the u.s. and i dont have anywhere to really
evaporate it. ill be goig to carolina for a few weekks so i might
have to wait til i get back to deal with it.

A.    "Toluene" is a solvent used to extract methamphetamine

base.

Date: Mon., 2/9/04
From: wyl_e_coyote1@yahoo.com
To: Cbass@yellowsnow.com
Message: can u send me something can we meet

Date: Tue., 2/10/04
From: Cbass@yellowsnow.com
To: wyl_e_coyote1@yahoo.com
Message: im gonna get a cabin for a week in seattle so i will
hopefully send you something by next monday.

Date: Tue., 2/10/04
From: wyl_e_coyote1@yahoo.com
To: Cbass@yellowsnow.com
Message: sounds good can i meet u

Date: Wed., 2/11/04
From: Cbass@yellowsnow.com
To: wyl_e_coyote1@yahoo.com
Message: how and where? my concern is with oliver being arrested
and whether hes trying to lessen his sentence…have you heard

whether he ben sentenced yet.

Date: Wed., 2/11/04: 16:55 (PST)
From: wyl_e_coyote1@yahoo.com
To: Cbass@yellowsnow.com
Message: next week in seattle. about oliver havent heard anything
lately

17.  On February 5, 2004, a letter was sent to Everyone.net by

facsimile transmittal requesting the preservation of all

subscriber and account information, including activity log

records and e-mail messages addressed to, sent from, or through

cbass@yellowsnow.com. This was done in the anticipation of

obtaining a search warrant or other legal process necessary to

obtain this information.

**H.    CONCLUSION**

18.  Based on the above information, and the collective knowledge,

training and experience of the Special Agents involved in the Feser

investigation, I believe that probable cause exists to establish

the following information:

A.  Feser has committed and is committing money laundering and

narcotics offenses in violation of Title 18, United States Code,

Sections 1956, and Title 21, United States Code, Sections 952(a);

B.  The e-mails and contents thereof that are stored in and

can be found at e-mail cbass@yellowsnow.com, are evidence and

instrumentalities of the above noted offenses;

C.  Said e-mails and contents thereof are now present at,

21



maintained by, and under the control of Everyone.net at e-mail

address cbass@yellowsnow.com.

19.  By this affidavit and application, I request that the court

issue a Search Warrant directed to Everyone.net allowing agents

to seize the e-mail and other information stored on the

Everyone.net server for the e-mail account identified in this

affidavit, including the following information:

    A.    All electronic mail stored and presently contained
in, or on behalf of, the following e-mail address/individual
account cbass@yellowsnow.com. Records requested to be provided
shall include any and all opened and unopened e-mails sent and/or
received by said e-mail accounts, including any attachments
thereto.

    B.    Printouts of all the above from original storage.  In
addition, I request that all electronic information also be
provided in its original electronic form on a Compact Disk.


    C.    Any and all transactional information, to include log
files, of all activity to the above-listed individuals, which
includes dates, time, method of connecting, port, dial-up, and/or
location.

    D.    All business records and subscriber information, in
any form kept, which pertain to the above listed subscribers and
accounts, including but not limited to applications, subscribers'
full names, all screen names associated with those subscribers
and accounts, all account names associated with those
subscribers, method of payment, phone numbers, addresses, and
detailed-billing records.

                              _____
                              MYLENE OCONER
                              Special Agent
                              United States Immigration and
                              Customs Enforcement

Sworn to and subscribed before me

on this 17 th day of February, 2004


Leslie E. Kobayashi
United States Magistrate Judge

## ATTACHMENT "A"

## ITEMS TO BE SEIZED

All stored electronic mail of any kind sent to, from and through the electronic mail addresses, cbass@yellowsnow.com, or associated with the user names "Osama Binladin" or "Jaren Feser," user ID 16700384, account holder "Jaren Feser" or "Osama Binladin," Client ID 147238, under Domain name, "Yellowsnow.com". Content and connection log files of all activity, by the user associated with the electronic mail address, cbass@yellowsnow.com, user names ""Osama Binladin" or "Jaren Feser," user ID 16700384, account holder "Osama Binladin" or "Jaren Feser," Client ID 147238, under Domain name, "Yellowsnow.com," including dates, times, methods of connecting (e.g., telnet, ftp, http), type of connection (e.g. modem, cable/DSL, T1/LAN), ports used, telephone dial-up caller identification records, and any other connection information or traffic data. All business records, in any form kept, in the possession of Everyone.net, that pertain to the subscriber and account associated with the electronic mail address, cbass@yellowsnow.com, user name "Osama Binladin" or "Jaren Feser,"  user ID 16700384, account holder, "Osama Binladin" or "Jaren Feser," client ID 147238, under Domain name, "Yellowsnow.com," including records showing the subscriber's full name, all screen names associated with that subscriber and account, all account names associated with that subscriber, methods of payment, phone numbers, all residential, business, mailing, and electronic mail addresses, detailed billing records, types and lengths of service, and any other identifying information.